[No. 11722–3–II.   Division Two.   July 18, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. SPENCER DONALD MILLER, *Appellant*.

---

[4]54 Wn. App. 489, 774 P.2d 526 (1989).

*Thomas W. Merrill,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Kathleen Proctor* and *Chris Quinn–Brintnall, Deputies,* for respondent.

THOMPSON, C.J.*—Spencer Donald Miller, a juvenile, appeals his sentence of 80 to 100 weeks for second degree robbery, RCW 9A.56.190, .210. He contends the sentence is longer than he would have received if he were sentenced as an adult under the Sentencing Reform Act of 1981 (SRA),

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

RCW 9.94A, and the sentence thus violated his statutory and constitutional rights. We affirm.

Mr. Miller was convicted in December 1987. As a "middle offender", the standard disposition range was 80 to 100 weeks of confinement. *See* RCW 13.40.020(13). The court accepted the probation officer's recommendation and imposed the standard disposition pursuant to RCW 13.40-.160(4)(a).

Mr. Miller first contends his sentence violated a provision of RCW 13.40.030(1)(a) requiring that, in establishing standard ranges, "in no case may the period of confinement and supervision exceed that to which an adult may be subjected for the same offense(s)".[1] He argues that if he were sentenced as an adult under the SRA, he would have received a sentence of 3 to 9 months, and would have been eligible for the first–time offender sentencing option, RCW 9.94A.120(5). His juvenile confinement is longer than it would have been as an adult, he contends, and it thus violates the statutory prohibition.

At issue here is the meaning of the statutory phrase "that to which an adult *may be subjected* for the same offense(s)". (Italics ours.) Mr. Miller's argument implies the language must be construed in light of the SRA; the State contends it refers to the statutory maximum penalty.

The State relies on *State v. Rice,* 98 Wn.2d 384, 655 P.2d 1145 (1982), in which the court addressed juvenile "manifest injustice" sentences that exceeded the maximum terms laid down in RCW 9A.20.020. The court held juvenile sentences were not limited to the adult maximums. *Rice,* at 397. *Rice* did not directly address the statute relied on by Mr. Miller and is further distinguishable by its focus on sentences outside the standard range. Nevertheless, *Rice* implicitly recognized the validity of juvenile sentences that do not exceed the limits contained in RCW 9A.20.020.

---

[1]*See also* RCW 13.40.160(7), which provides:

"In no case shall the term of confinement imposed by the court at disposition exceed that to which an adult could be subjected for the same offense."

■ The language of the juvenile justice act, adopted in 1977, obviously cannot be interpreted by referring to an adult sentencing scheme adopted 4 years later. This conclusion is supported by a subsequent amendment to the juvenile justice act. In 1983, clearly in response to the *Rice* decision, the Legislature added RCW 13.40.160(7), forbidding juvenile sentences that exceed the term "to which an adult *could be subjected* for the same offense." (Italics ours.) Laws of 1983, ch. 191, § 8. The amendment is a legislative disapproval of the central holding in *Rice* (that juvenile sentences may exceed the maximums of RCW 9A.20.020), but is an implicit affirmation of *Rice*'s recognition that juvenile sentences *up to* the statutory limit are permissible. If the Legislature had intended the interpretation proposed by Mr. Miller, it surely would have included language that specifically referred to the SRA.

Meaningful comparison of sentences under the juvenile justice act and the SRA is impossible. Mr. Miller argues if he were sentenced under the SRA, he would have received a significantly shorter sentence. This obviously is because the SRA seriously limits the inclusion of juvenile offenses in calculating criminal history. RCW 9.94A.030(10)(b); *see State v. Schaaf*, 109 Wn.2d 1, 11–12, 743 P.2d 240 (1987); *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987). Under the Juvenile Justice Act of 1977, however, "criminal history" includes all criminal complaints that are found correct by a court or that result in diversion agreements. RCW 13.40.020(6)(a), (b). Indeed, it was Mr. Miller's extensive juvenile offender history, beginning in 1984 and ranging from criminal trespass to first degree theft and possession of a dangerous weapon, that made him a "middle offender". RCW 13.40.020(13).

The *Rice* decision discussed in great detail the differences between Washington's juvenile and adult sentencing schemes. The court wrote application of adult standards

would be, in effect, telling the juvenile court to ignore the needs of the juvenile until he is convicted of committing

an even more serious offense. Such an approach is necessary under the adult system in which punishment is the paramount purpose and where the punishment must fit the crime. But it is inimical to the rehabilitative purpose of the juvenile justice system. It would destroy the flexibility the Legislature built into the system to allow the court, in appropriate cases, to fit the disposition to the offender, rather than to the offense.

*Rice,* at 397. The standard range sentence here violated neither the letter nor the spirit of the juvenile justice act.

Mr. Miller next contends the sentence violated the equal protection requirements of the fourteenth amendment to the United States Constitution and article 1, section 12 of the Washington State Constitution. This issue was resolved conclusively by *Rice,* at 400–01, which applied the strict scrutiny test and concluded the State has a compelling interest in providing a separate, rehabilitative system for juvenile offenders. There is no merit to Mr. Miller's contention.

The sentence is affirmed.

GREEN and MUNSON, JJ., concur.

Review denied at 113 Wn.2d 1037 (1990).